## APPEAL OF E. R. BERNSTEIN AND FANNIE H. BERNSTEIN.

Docket No. 1258.    Promulgated February 26, 1927.

INCOME.—These petitioners, during the year 1919, did not receive, nor was there set aside for their use or benefit out of the transactions described in the record, anything of such a definitely known and ascertainable value as to be classified as income in that year.

*E. W. R. Ewing, Esq.*, for the petitioners.
*George K. Bowden, Esq.*, for the Commissioner.

The petitioners brought this proceeding for the redetermination of deficiencies asserted in letters dated October 29, 1924. The letter addressed to E. R. Bernstein asserted deficiencies for the year 1919 in the amount of $6,382.46, and for the year 1920 in the amount of $1,106.77, and indicated an overassessment for the year 1918 in the amount of $220.26. The letter addressed to Fannie H. Bernstein asserted deficiencies for the year 1919 in the amount of $16,813.82, and for the year 1920 in the amount of $1,106.77.

The one issue presented and tried before the Board is whether the petitioners, as a marital community, received, during the year 1919, income in the amount of $75,000, resulting from the alleged assignment of oil leases to, and the issue of corporate stock shares by, the Mohawk Oil Co.

### FINDINGS OF FACT.

The petitioners are, and during the years here under consideration were, husband and wife, residing at Shreveport, La.

The Mohawk Oil Co. was a corporation organized June 4, 1918, for the purpose of engaging in the business of producing oil. It had an authorized capital stock of $200,000, consisting of 2,000 shares of the par value of $100 each. It was organized for the purpose of taking over and did immediately succeed and take over a business theretofore owned by F. L. Dyer and E. M. Brown, Jr., who had operated as a partnership under the name and style of Brown & Dyer. In a balance sheet statement of the assets and liabilities of the partnership of Brown & Dyer, made as of June 30, 1918, there was carried an asset item designated as leases, $4,274.39. The same balance sheet statement showed capital paid in $58,800; surplus earned $28,400.82; total capital and surplus $87,200.82. In order to create assets to balance the Mohawk Oil Co.'s stock issue of $200,000, the item of leases among the assets of Brown & Dyer was appreciated and written up on the books of the Mohawk Oil Co. in the amount of $112,799.18 in excess of the value at which the same leases had been carried on the books of the partnership.

Immediately following the organization of the Mohawk Oil Co., Dyer was the owner of 1,000 shares of its capital stock and Brown was the owner of the remaining 1,000 shares. Sometime between the date of the organization and October 5, 1918, Brown and E. R. Bernstein purchased the interest and all the shares of stock held by Dyer; Brown purchasing one-half thereof and Bernstein the other half. Bernstein thereupon became the owner of one-quarter, 500 shares, of all the authorized and issued stock of the Mohawk Oil Co. The price paid, or to be paid, for the 500 shares of stock so acquired by Bernstein was $51,300, upon which a cash payment of $500 was made, and for the balance notes were given.

At that time E. R. Bernstein was, and still is, vice president and general manager of the Louisiana & Northwestern Railroad Co. Upon acquiring stock in the Mohawk Oil Co. he became a director of that corporation.

Throughout the year 1918, Bernstein, in association with Brown, had been acquiring leases of prospective oil lands in Caddo Parish, Louisiana. Eight of such leases were taken in the name of E. R. Bernstein, trustee, one in the name of Brown, trustee, two in the name of Brown, individually, one in the name of F. D. Roemer, secretary of the Mohawk Oil Co., and ten in the names of other persons. All of these oil and gas leases were of the kind known in the parlance of the oil districts as wildcat leases.

As early as January 4, 1919, there was under consideration by Brown and Bernstein the proposal to sell and transfer all the so-

called oil leases owned or controlled by Brown and Bernstein and the Mohawk Oil Co. upon lands in Caddo Parish to a corporate organization known as Tex-La-Homa Oil Corporation. Under date of January 4, 1919, an entry was made in the journal of the Mohawk Oil Co., on page 6½, as follows:

```
Jan. 4, 1919, Leases_____ $300, 000. 00
Capital Stock Suspense_____ $300, 000. 00
    Miscellaneous Leases taken from E. M.
    Brown, Jr., and E. R. Bernstein for
    which Stock was to be issued when
    increase was authorized.
```

Appropriate entries were likewise made upon the company's ledger.

On March 12, 1919, Brown and Bernstein, acting both individually and as trustees, executed a formal instrument, using the usual words of conveyance, assignment, and transfer, and for a stated consideration of $100 and other good, sufficient, and valuable consideration, by which instrument they conveyed to the Mohawk Oil Co. twenty-two descriptions of oil and gas leases upon lands situated in Caddo Parish, and on the same day the Mohawk Oil Co., by proper corporate action, executed a like instrument, transferring and conveying the same said twenty-two descriptions of oil and gas leases, together with one other certain oil and gas lease acquired by the Mohawk Oil Co. as lessee under date of March 12, 1919, together with various descriptions of personal property, such as pipe, lumber, camping outfit, mules, horses, auto truck, wagons, saddles and harness, for a stated consideration aggregating $2,010,-000, together with 15,200 shares of the preferred stock and 35,200 shares of the common no-par stock of the said Tex-La-Homa Oil Corporation.

On or about the twelfth day of July, 1919, in the stock book of the Mohawk Oil Co., there were written certificates Nos. 7 and 8. Certificate No. 7 was written in the name of E. M. Brown, Jr., for 2,250 shares of the stock of said company. Certificate No. 8 was written in the name of E. R. Bernstein for 750 shares of said stock. These certificates were signed by E. M. Brown, Jr., president, and F. D. Roemer, secretary. The said certificate No. 8 was not then delivered to E. R. Bernstein. If it was torn out of the stock book, it was kept in a safe deposit box held by the Mohawk Oil Co. in the office of its bank in Shreveport. Bernstein never had this certificate of stock in his possession and did not know that it had been written until on or about January 3, 1921, when the certificate was shown to him and he was asked to sign his name to the endorsement of transfer on the back thereof, with which request he then complied. During all of the years 1918 to 1921, inclusive, Bern-

stein, although a director of the Mohawk Oil Co., took no active interest in the management or the accounting or office procedure of the company. He never availed himself of the privilege of looking at the company's books, records, or accounts.

During the years from October, 1918, to June 22, 1921, the Mohawk Oil Co. carried upon its ledger an open account with E. R. Bernstein in which the debit and credit entries are as follows:

MOHAWK OIL COMPANY

E. R. BERNSTEIN.

| 1918. | | | 1918. | |
|---|---|---|---|---|
| Oct. 18 | 1/2 F. L. Dyer Note | $12,000.00 | Dec. 31 Salary | $3,000.00 |
| | 1/2 Atty. Fee B. F. Roberts a/c F. L. Dyer | 50.75 | | |
| Dec. 31 | R. S. Allen Texas Leases | 1,000.00 | | |
| 1919. | | | 1919. | |
| Jan. 15 | 1/2 F. L. Dyer Note | 25,000.00 | Jan. 31 Salary | 1,000.00 |
| Feb. 15 | Caddo B. Land Co | 10,000.00 | Feb. 28 Do | 1,000.00 |
| 27 | Bernstein Bros | 36,000.00 | Mch. 15 Do 1/2 | 500.00 |
| Apr. 19 | 1/2 Ind. O & G Ascn. Dues | 187.50 | 8 Min Rfts. J. Bradford | 640.00 |
| 30 | 1/2 " " " " | 10.00 | 9 " " " | 168.90 |
| 30 | 1/2 " " " " | 187.50 | Aug. 28 Leases Bradford-Smith | 4,323.50 |
| 25 | Check | 5,500.00 | | |
| Jul. 5 | 1/2 Vordenbaumen Suit | 459.16 | Sep. 5 " Dixon | 123.60 |
| 17 | Check | 5,500.00 | Oct. 2 1st Payment F. L. Dyer | 1,000.00 |
| Aug. 8 | 1/2 phones to N. Y | 9.85 | Feb. 21 Office Expenses | 20.32 |
| 11 | 1/2 First Payment F. L. Dyer | 500.00 | Jan. 30 Salary 3/15-6/30 | 3,500.00 |
| 11 | Interest 10-2-18 to 8-11-19 | 1,871.78 | Apr. 30 Ret. R. S. Allen Leases | 1,000.00 |
| 20 | 1/2 Wires | 7.42 | Jul. 15 Bills Receivable | 52,500.00 |
| Dec. 17 | 1/2 Planters Note & Int | 15,096.90 | 17 Bernstein Bros | 36,000.00 |
| 20 | 1/2 Wires Nov | 7.45 | 31 Salary 6/30-7/31 | 1,000.00 |
| 24 | 1/2 Dues L. O. & G. Ascn. Dues | 400.00 | Aug. 11 Interest 3/9-8/11 | 371.32 |
| 31 | 1/2 Expense E. R. B. Trustee | 82.40 | 31 Salary 8/1/31 | 1,000.00 |
| | 1/2 Expense E. R. B. Trustee | 910.00 | Oct. 31 " 9/1-10/31 | 2,000.00 |
| | 1/2 Expense E. R. B. Syndicate | 136.50 | Dec. 31 " 11/1-12/31 | 2,000.00 |
| | 1/2 Wires Dec | .90 | | |
| 1920. | | | 1920. | |
| Jan. 20 | 1/2 F. L. Dyer Note | 13,800.00 | Mch. 21 Salary 1/1-3/31 | 3,000.00 |
| | 1/2 " " " Interest | 542.54 | | |
| Mch. 31 | 1/2 Wires March | 1.00 | | |
| Dec. 31 | Hollingsworth Well Loss— | 3,333.34 | | |
| | Interest on $52,500 to 12/31/20 | 4,593.75 | | |
| 1921. | | | 1921. | |
| June 21 | Bills Receivable | 52,500.00 | Jun. 22 750 Shares Mohawk Oil Company Stock Surrendered in payment of Account | 75,000.00 |
| | | | E. K. Brown Jr. A/c | 541.10 |
| | | 189,688.74 | | 189,688.74 |

The condensation and analysis of this account for each calendar year shows a result as follows:

| Year. | Debit. | Credit. | Debit balance for year. | Credit balance for year. |
|---|---|---|---|---|
| 1918 | $13,050.75 | $3,000.00 salary | $10,050.75 | |
| 1919 | 101,867.36 | 12,000.00 salary / 96,147.64 cash, etc / 108,147.64 | | $6,280.28 |
| 1920 | 22,270.63 | 3,000.00 salary / 6,280.28 1919 cr. bal / 9,280.28 | 12,990.35 | |
| 1921 | 52,500.00 | 541.10 / 51,958.90 | | |
| June 22, 1921 balance | | | 75,000.00 | |
| Stock shares to balance account | | | | 75,000.00 |

On or about February 25, 1924, Bernstein furnished to the Commissioner's office, among other papers, a balance sheet of the Mohawk Oil Co. as of December 31, 1918, which, condensed, shows the following assets and liabilities:

| Assets. | | Liabilities. | |
|---|---|---|---|
| Cash | $34,431.94 | Capital stock | $200,000.00 |
| Stocks and bonds | 63,800.00 | Bills payable | 131,000.00 |
| Accounts receivable | 19,317.34 | Accounts payable | 68,675.78 |
| Leases | 118,484.07 | Reserve for depreciation | 20,897.05 |
| Drilling equipment | 209,004.23 | Surplus | 24,464.75 |
| Total | 445,037.58 | Total | 445,037.58 |

Attached to the income and profits-tax return of the Mohawk Oil Co. for the calendar year 1919, is a memorandum which purports to show properties sold to the Tex-La-Homa Oil Corporation, and in this memorandum under the designation of "leases," there appears—

| | |
|---|---|
| Miscellaneous | $417,073.57 |
| Seven other items of leases, aggregating | 16,646.03 |
| Total | 433,719.60 |

### OPINION.

Trussell: At the trial of this cause the atmosphere appeared surcharged with elements of mystery. There were thinly veiled insinuations of fraud, false swearing and attempts to cover up and avoid the truth. Whether there existed any basis for the apparent state of mental perturbation we do not know. We do know, however, that no foundation for it got into the record. Stripped of all the elements of mystery, the record of this case shows simply that prior to June, 1918, two men by the names of Brown and Dyer, associated as partners, had been operating a business of drilling and prospecting for oil and gas; that in June, 1918, they formed a corporation and became equal owners therein; and that shortly after the formation of this corporation Bernstein acquired 500 shares of its capital stock for which he undertook to pay $51,300.

The record also shows that during the year 1918 Bernstein, in association with Brown, had been acquiring so-called oil and gas leases upon unexplored or at least unproved lands; that together they had acquired twenty-two descriptions of oil and gas leases. Eight of these were made in the name of Bernstein, trustee, and the latest dated of these eight appears to have been procured on June 14, 1918, and, although Bernstein's account on the ledger of the Mohawk Oil Co. does not appear to have begun until October, 1918, there is little doubt that the deal, under which he acquired stock

in the Mohawk Oil Co., was made in June, 1918, and probably at or about the time the same was organized. When the original stock issue of the Mohawk Oil Co. was made, its asset item of leases acquired from the partnership of Brown and Dyer was appreciated in the amount of $112,799.18, in order to make the apparent assets of the corporation equal to the par value of the stock issued. This was the beginning of what appears to have been a consistent plan to inflate values of wildcat leases for the purpose of future exploitation. This plan was continued by later on agreeing to turn over to the Mohawk Oil Co. other leases acquired in the name of Brown and Bernstein, and another inflation of $300,000 was posted on the books of the Mohawk Oil Co. on January 4, 1919. Then came the climax of high finance, as carried out by these exploiters. These same wildcat leases were on March 12, 1919, turned over to another corporate exploiter for a stated consideration of $2,010,000 in cash, 15,200 shares of preferred stock, and 35,200 shares of no-par value stock. There is thus presented the picture of the manner in which some millions of dollars of pretended capital have been manufactured out of practically nothing.

The record is convincing that the leases, whether those acquired by the Mohawk Oil Co. from it predecessor partnership, Brown and Dyer, or those acquired under assignment from Brown and Bernstein, had no substantial value; that any stock shares issued as against such assets had no more value than the assets themselves; that the alleged sale to the Tex–La–Homa Oil Corporation was nothing more than an effort to sell these, among other properties, to the public at an inflated valuation which was wholly unrepresentative of any true value.

The question before the Board is, Did Bernstein and his wife acquire, in the year 1919, any gain out of these transactions? The answer to this question is found in the ledger record of Bernstein's open account upon the books of the Mohawk Oil Co. This account, running through the years from October, 1918 to June, 1921, shows various entries of debits and credits, transfers of cash, properties, bills receivable, etc. At the end of the year 1918 this account showed a debit balance against Bernstein in the amount of $10,050.75. At the end of the year 1919 it showed a credit balance in favor of Bernstein in the amount of $6,280.28. At the end of the year 1920 it showed a debit balance, after allowing for the credit at the end of 1919, in the amount of $12,990.35. On June 22, 1921, it showed a further debit balance in the amount of $51,958.90. The total of these debit balances is $75,000, and on that date this debit balance was credited with Bernstein's one-fourth share, or interest, in the $300,-000 of appreciation of leases written up on the books of the Mohawk Oil Co. on January 4, 1919.

It thus appears that on the twenty-second day of June, 1921, Bernstein received the benefit of the sum of $75,000, and that he must then be held to have acquired a gross income in that amount. And, we are of the opinion that upon this record it is established that Bernstein did not receive this $75,000 of income in the year 1919.

> *The deficiencies may be redetermined and settled upon 15 days' notice, pursuant to Rule 50, and judgment will be entered in due course.*

MILLIKEN, MURDOCK, and SMITH not participating.