*327 OPINION.
Thussell :
At the trial of this cause the atmosphere appeared surcharged with elements of mystery. There were thinly veiled insinuations of fraud, false swearing and attempts to cover up and avoid the truth. Whether there existed any basis for the apparent state of mental perturbation we do not know. We do know, however, that no foundation for it got into the record.- Stripped of all the elements of- mystery, the record of this case shows simply that prior to June, 1918, two men by the names of Brown and Dyer,, associated as partners, had been operating a business of drilling and prospecting for oil.- and gas; that in June, 1918, they formed a corporation and became equal owners therein; and that shortly after the formation of this corporation Bernstein acquired 500 shares of its capital stock for which he undertook to, pay $51,300.
The record also shows that during the year 1918 Bernstein, in association with Brown, had been acquiring so-called oil and gas leases upon unexplored or at least unproved lands; that together they had acquired twenty-two descriptions. of oil and gas leases. Eight of these were made in the name of Bernstein, trustee, and the latest dated of these eight appears to have been • procured on June 14, 1918, and, although Bernstein’s account on the ledger of the Mohawk Oil Co. does not appear to have begun until October, 1918, there is little doubt that the deal, under which he acquired stock *328 in the Mohawk Oil Co., was made in June, 1918, and probably at or about the time the same was organized. When the original stock issue of the Mohawk Oil Co. was made, its asset item of leases acquired from the partnership of Brown and Dyer was appreciated in the amount of $112,799.18, in order to make the apparent assets of the corporation equal to the par value of the stock issued. This was the beginning of what appears to have been a consistent plan to inflate values of wildcat leases for the purpose of future exploitation. This plan was continued by later on agreeing to turn over to the Mohawk Oil Co. other leases acquired in the name of Brown and Bernstein, and another inflation of $300,000 was posted on the books of the Mohawk Oil Co. on January 4, 1919. Then came the climax of high finance, as carried out by these exploiters. These same wildcat leases were on March 12, 1919, turned over to another corporate exploiter for a stated consideration of $2,010,000 in cash, 15,200 shares of preferred stock, and 35,200 shares of no-par value stock. There is thus presented the picture of the manner in which some millions of dollars of pretended capital have been manufactured out of practically nothing.
The record is convincing that the leases, whether those acquired by the Mohawk Oil Co. from it predecessor partnership, Brown and Dyer, or those acquired under assignment from Brown and Bernstein, had no substantial value; that any stock shares issued as against such assets had no more value than the assets themselves; that the alleged sale to the Tex-La-Homa Oil Corporation was nothing more than an effort to sell these, among other properties, to the public at an inflated valuation which was wholly unrepresentative of any true value.
The question before the Board is, Did Bernstein and his wife acquire, in the year 1919, any gain out of these transactions? The answer to this question' is found in the ledger record of Bernstein’s open account upon the books of the Mohawk Oil Co. This account, running through the years from October, 1918 to June, 1921, shows various entries of debits and credits, transfers of cash, properties,.bills receivable, etc. At the end of the year 1918 this account showed a debit balance against Bernstein in the amo'unt of $10,050.75. At the end of the year 1919 it showed a credit balance in favor of Bernstein in the amount of $6,280.28. At the end of the year 1920 it showed a debit balance, after allowing for the credit at the end of 1919, in the amount of $12,990.35. On June 22, 1921, it showed a further debit balance in the amount of $51,958.90. The total of these debit balances is $75,000, and on that date this debit balance was credited with Bernstein’s one-fourth share, or interest, in the $300,-000 of appreciation of leases written up on the books of the Mohawk Oil Co. on January 4, 1919.
*329 It thus appears that on the twenty-second day of June, 1921, Bernstein received the benefit of the sum of $15,000, and that he must then be held to have acquired a gross income in that amount. And, we are of the opinion that upon this record it is established that Bernstein did not receive this $75,000 of income in the year 1919.

The deficiencies may be redetermined and settled upon 15 days' notice, pursuant to Rule 50, and judgment will be entered in due course.

Milliicen, Murdock, and Smith not participating.